Minute Order Form (06/97)

JJ-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4823 | **DATE** | 7/18/2003 |
| **CASE TITLE** | Delbert Howard vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment [18-1] is granted and plaintiff's motion for summary judgment or remand is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 3 | **Document Number** |
| ✓ | Notices mailed by judge's staff. | number of notices | |
| | Notified counsel by telephone. | JUL 21 2003 | 24 |
| | Docketing to mail notices. | date docketed | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 7/18/2003 | |
| | | date mailed notice | |
| KF courtroom deputy's initials | | | |
| | | KF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DELBERT L. HOWARD,  )
    Plaintiff,  )
    v.  )
JO ANNE B. BARNHART,  )
Commissioner of Social Security,  )
    Defendant.  )

DOCKETED
JUL 2 1 2003

No. 02 C 4823

Mag. Judge Michael T. Mason

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The claimant, Delbert Howard, has brought a motion for summary judgment seeking judicial review of the final decision of Defendant Jo Anne B. Barnhart, who denied Howard's claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") Benefits under the Social Security Act (the "Act"), 42 U.S.C. §§ 416, 423, 1381a. Defendant Barnhart filed a cross-motion for summary judgment, asking that we uphold the decision of the Administrative Law Judge ("ALJ") who originally decided the case and the Appeals Board which reviewed the ALJ's decision. We have jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g), which grants federal courts the power to review the Social Security Commissioner's final decisions.

For the following reasons, this Court denies Howard's request that we reverse the decision of the ALJ, and therefore affirms the ALJ's decision that Howard is not disabled and not entitiled to DIB or SSI.

**Procedural History**

Howard filed concurrent applications for DIB and SSI on May 25, 1999. (R. 108-

24

110; 203-204). The Social Security Administration ("SSA") initially denied Howard's claims on July 1, 1999, and Howard did not pursue an appeal. (R. 67-70; 206-209). Howard subsequently filed a new set of concurrent applications for DIB and SSI on January 12, 2000, alleging that he had been disabled since July 23,1998. (R. 111-113; 210-211). On March 24, 2000, Howard's disability claims were denied. (R. 71-74; 213-216). Howard filed a request for reconsideration on May 1, 2000 (R. 75), which was denied on May 24, 2000. (R. 76-78). Howard then filed a request for a hearing before an ALJ on June 26, 2000. (R. 79).

The hearing was held on January 4, 2001 before ALJ Michael McGuire. (R. 29-62). On March 21, 2001, ALJ McGuire issued a decision finding Howard not disabled because he could perform a significant number of jobs existing in the national economy, or, in the alternative, could return to his past relevant work as a computer operator. (R. 18-24). Howard filed a request for review of the ALJ's decision with the Appeals Council (R. 12), which was denied on April 12, 2002. (R. 9-10). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. *See Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001); *Herron v. Shalada*, 19 F.3d 329 (7th Cir. 1994). Howard now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## Howard's Testimony

At the time of the hearing before the ALJ, Howard was a forty-six year old man. (R. 19). Howard has a high school education and two years of vocational training in computer programming and operations. (R. 36). Howard testified that since 1987, when he was involved in an automobile accident (R. 174), he has suffered from pain in his lower back which is sometimes mild and sometimes extreme. (R. 47). Howard can walk

2

two to four blocks before feeling fatigue or numbness in his calves and knees. (R. 48-49; 54). His back pain was previously incapacitating, but disappeared after two weeks of applying family remedies, including hot soaks and aspirin. (R. 49-50). Howard did not seek medical treatment when his pain was incapacitating. (R. 50). Howard also testified that he got very bad headaches every day, and that he took aspirin and lay down to treat them; they lasted about an hour or two. (R. 55-56). Howard had some pain when moving his head from side to side. (R. 56). He also had kidney problems which caused him to urinate frequently (R. 58), and he is also blind in his right eye. (R. 33).

At the hearing, Howard testified that he worked as a computer operator from 1977 until 1998. (R. 37). His work as a computer operator involved lifting boxes of computer paper and forms weighing about twenty-five pounds each. (R. 38). He stopped working as a computer operator when the company shut down his division in 1998 as a result of a corporate takeover. (R. 38). Howard had the opportunity to continue working with the new company but decided not to because of his back pain. (R. 39). Since that time, Howard worked for two to three months at a temporary agency, which assigned him to work as a day laborer for Avon on a production line. (R. 39; 42). Otherwise, Howard has not worked. (R. 41). Howard was contemplating going back to school and thought he would be able to do that. (R. 44-45).

Howard testified that he stopped working at the temporary agency because he went to Louisiana to visit relatives for a couple of weeks, but that he could have kept working if he had not gone to Louisiana. (R. 46). Howard testified his cousin drove him to Louisiana, stopping periodically along the way. (R. 34).

At the hearing, Howard testified that there is no elevator in his apartment building

3

and that he lives on the third floor. (R. 35). To attend the hearing, Howard took the elevated train, which required that he walk up and down stairs. (R. 35-36). Howard testified that he had to walk slowly while going up the stairs. (R. 47).

## Howard's Medical Examinations

On June 2, 1999, a Dr. Rana examined Howard at the request of the Illinois Department of Public Aid. (R. 174-177). Howard told Dr. Rana that he injured his back in an automobile accident in 1987. Howard complained of pain that radiated up to his neck and down both legs, making his feet feel occasionally numb. Howard told Dr. Rana that he can walk one to two blocks and does not use an ambulatory aid or take any medications. Howard told Dr. Rana he had never been hospitalized for back pain. (R. 174). Upon examination, Dr. Rana found no range of motion defects. (R. 175). Dr. Rana also found that Howard's motor strength in all the major muscle groups were intact along with sensation and reflexes. (R. 176). Dr. Rana noted that Howard is blind in his right eye. (R. 175). In conclusion, Dr. Rana found that Howard had full capacity to perform daily physical activities. In addition, Dr. Rana concluded that Howard was not limited in social functioning, concentration, persistence or pace. (R. 177).

On February 29, 2000, Dean Velis, M.D., examined Howard at the request of the SSA. (R. 178-81). Howard told Dr. Velis that he started having low back pain in the 1990s, that his pain is chronic and persistent, and that it has gotten progressively worse. (R. 178). Howard told Dr. Velis that the pain is worse with exertion, such as walking one to two blocks, climbing one flight of stairs, or bending and lifting weight. (R. 178). Howard said he takes over-the-counter medication for the pain, such as Advil, Ibuprofen and Excedrin. (R. 178). Howard also told Dr. Velis that he had visited Cook

4

County Hospital one time for the pain and was given Ibuprofen 600 mg. (R. 178). Upon examination, Dr. Velis noted that Howard was blind in his right eye, and Howard advised him that the blindness was incurred due to an accident he suffered as a child. (R. 179). Dr. Velis found Howard had low back pain with a limited range of motion and radicular symptoms with paravertebral muscle tenderness. (R. 180). Howard's straight leg test was positive at 20 degrees and his back was limited to 50 degrees of flexion and 10 degrees of extension. (R. 179). Dr. Velis found crepitus was appreciated in the knees. (R. 180). However, Dr. Velis found Howard had full range of all joints, that he was able to bear his own weight, and that his gait was normal. (R. 180). The doctor stated that an x-ray would be helpful for a more definitive assessment of the problem. (R. 180). Dr. Velis noted that Howard was cooperative, polite, and had a sincere demeanor. (R. 179). Dr. Velis stated that he spent thirty minutes with Howard, which included the dictation of his report. (R. 178).

On February 29, 2000, Howard received a lumboscral spine examination by Eugene Kovalsky, M.D. (R. 183). The examination was normal. (R. 183).

On March 16, 2000, a Physical Residual Functional Capacity Assessment was completed by a state agency physician. (R. 184-91). The report indicated problems with Howard's depth perception because of his right-eye blindness (R. 187), and further indicated that the visual acuity in Howard's left eye had been corrected to 20/25. (R. 191). The state agency doctor indicated that there was no spinal deformity and that the lumboscral spine x-ray was negative. (R. 191). The report also stated that Howard's range of motion was limited to 50 degrees flexon and 10 degrees extension with paravertebral muscle tenderness; however, the motor strength of all of his extremities

5

was normal. (R. 191). The state agency physician found that Howard has crepitus in the knees. (R. 191). The state agency physician concluded that Howard could perform medium-level work but was limited by depth perception problems. (R. 191).

On April 4, 2000, Howard was seen by a physician for back pain. (R. 193). The doctor prescribed 600 milligrams of Motrin. (R. 193).

In December 2000, Howard went to Cook County Hospital and was referred to Peter Orris, M.D. in the Division of Occupational Medicine. (R. 194, 202). Howard was also referred to the back clinic for x-rays. (R. 198). On February 14, 2001, Dr. Orris completed a Physical Residual Functional Capacity Questionnaire after examining Howard on two occasions for one to two hours. (R. 199-202). The report indicated that Howard's symptoms consisted of low back pain and exertion with prolonged standing, pain in his neck, and a tingling sensation in both arms. (R. 199). Dr. Orris further reported that Howard had degenerative joint disease of his cervical spine with a bone spur, the narrowing of the C4-C5 disc space, and the straightening of his spine due to muscle spasms. (R. 199). Dr. Orris recommended a treatment of 800 milligrams of Ibuprofen and physical therapy. (R. 199). His report stated that Howard was not a malingerer and that his impairments were reasonably consistent with his symptoms and functional limitations. (R. 200). The report also indicated that emotional factors contributed to the severity of Howard's symptoms; however, Dr. Orris did not report that Howard had any psychological conditions. (R. 200). Dr. Orris concluded that Howard was capable of handling only low stress jobs. (R. 200).

According to Dr. Orris' report, Howard could walk one to two city blocks before rest or severe pain, could sit or stand for 30 minutes, and could sit or stand for less than

6

two hours in an eight hour day. (R. 200-201). Dr. Orris also concluded that Howard needs to walk around every 30 minutes for about five minutes. (R. 201). In addition, he concluded that Howard needs to take breaks every two hours for about five minutes. (R. 201). Howard does not need to use a cane. (R. 201).

Dr. Orris indicated that Howard can occasionally lift less than 10 pounds and has significant limitations in doing repetitive reaching, handling or fingering. (R. 201). Dr. Orris concluded that, during an eight our day, Howard could use his hands for grasping and twisting 12% of the time, use his fingers for fine manipulations 12% of the time, and reach his arms overhead less than 10% of the time. Howard could bend and twist at the waist 12% of the time during an eight hour day. (R. 202). Finally, Dr. Orris opined that Howard would be absent from a job about three times a month due to his impairments. (R. 202).

### Vocational Expert

At the hearing before ALJ McGuire, vocational expert ("VE") Thomas F. Dunlevy testified that a computer operator is a semi-skilled occupation preformed at a medium level of exertion. (R. 60). The VE stated that, in his experience, he has consistently heard that computer operators lift boxes of forms. (R. 60).

### Standard of Review

In reviewing the final decision of the Commissioner, this Court must accept as conclusive the findings of fact made by the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the Commissioner's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to

7

support a conclusion.'" *Diaz v. Charter*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1972)). If the record contains such support, this Court must affirm the decision of the Commissioner unless she has made an error of law. *Veal v. Bowen*, 833 F.2d 693, 696 (7th Cir. 1987). This Court may not re-weigh the evidence, re-evaluate the facts, or substitute its own judgment in determining whether a claimant is or is not disabled. *Luna v. Shalala*, 22 F. 3d 687, 689 (7th Cir. 1994). "Where conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled, the responsibility for the decision falls on the [Commissioner]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). This Court may not reconsider an ALJ's credibility determinations. *Prince v. Sullivan*, 933 F.2d 598, 601-02 (7th Cir. 1991). Thus, a claimant must show that no reasonable person, based upon the record as a whole, could have found as the Commissioner did. *Rucker v. Shalala*, 894 F. Supp. 1209, 1213-14 (S.D. Ind. 1995).

## Legal Analysis

Howard contests the ALJ's determination that he is not disabled under the SSA. In particular, Howard claims that the ALJ improperly developed the administrative record by discrediting Dr. Orris' assessment on the basis that the assessment "consists of the examiner's conclusionary restrictions without any documented basis therefor." (R. 21). Second, Howard argues that the ALJ erroneously discounted his credibility by mischaracterizing Howard's intent to return to work and school and by ignoring the qualified nature of his trip to Louisiana. Finally, Howard argues that the ALJ's step-five determination was not supported by substantial evidence.

To determine whether an adult claimant is disabled under the Act and thus

8

entitled to benefits, the ALJ must undertake a five-step process which assesses whether the individual is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental ailment. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Furthermore, an individual is considered disabled only if he is not able to perform any of his previous work or any other work existing in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). In making his determination, ALJ McGuire applied the standard five-step process set forth in the regulations, which required him to evaluate, in sequence:

(1)     Is the claimant presently unemployed?

(2)     Is the claimant's impairment or combination of impairments severe?

(3)     Do the claimant's impairments meet or exceed any of the specific impairments listed in 20 C.F.R. § 404, Subpt. P. App. 1 (the "Listing"), which the [Commissioner] acknowledges to be conclusively disabling?

(4)     If the impairment has not been listed by the [Commissioner] as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his or her past relevant work?

(5)     Is the claimant unable to perform any other work in the national economy given his or her age, education or work experience? *See Clifford v. Apfel*, 227 F.3d 863, 838 (7th Cir. 2000).

9

Under the five-part sequential analysis, "[a]n affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heck*, 760 F.2d 160, 162 n.2 (7th Cir. 1985) (citing 20 C.F.R. § 404.1520 (1984)).

In undertaking the five-step process, the ALJ first concluded that Howard was not presently gainfully employed. (R. 20). Next, the ALJ concluded that the medical evidence showed that Howard suffered from low back pain, degenerative joint disease of the cervical spine, and right eye blindness; and, while the ALJ considered Howard's impairments to be severe, he concluded that they were not severe enough to meet one of the impairments listed in or medically equivalent to one listed in the Listing. (R. 20).

Since the ALJ concluded that Howard's impairments did not meet any of the impairments listed in the Listing, the ALJ had to consider whether the claimant was able to perform his past or relevant work or other work existing in sufficient numbers in the economy. The ALJ found that, with the exception of Dr. Orris' report, no medical source had found Howard to be very limited at all. (R. 21). The ALJ further found that Howard's complaints of pain and disability were not credible because his testimony provided a conflicting view of his abilities, including that: he had received no medical treatment for his back pain after stopping work as a computer operator and instead used a "family remedy;" he took the "el" to the hearing and lives on the third floor of a building without an elevator; he does nor require a cane for balance; he is not limited in standing, and can walk three to four blocks before fatigue or numbness sets in; he can carry one to two bags of groceries; he sometimes feels pain when moving his head from side to

side; he spends most of his day lying down and can sit for only 30 minutes at a time even though he was able to take a trip to Louisiana to visit relatives; he suffers from headaches that last only an hour and are relieved by aspirin and lying down; and he was considering going to school or getting a computer-related job. As a result of this credibility determination, as well as the opinions submitted by the physicians, the ALJ concluded that Howard was not disabled.

In addition, the ALJ considered that Howard is a 46-year-old man, which is defined as a "younger individual" under 20 C.F.R. §§ 404.1563(c), 416.963 (R.22), that Howard has a high school education, and that transferable skills are not an issue in this case. (R. 22). The ALJ then applied the Medical-Vocational Guidelines ("guidelines") under 20 C.F.R. § 404, Subpt. P. App. 2 and concluded that Howard had the capacity to perform substantially all of the requirements of medium-level work with accommodation of his right-eye vision limitation, that Howard is not disabled, and that there are jobs existing in significant numbers in the economy which Howard is able to perform. (R. 22). The ALJ alternatively found that Howard could return to his past relevant work – "something he testified he was thinking of doing." (R. 22).

## A. The ALJ did not improperly discredit Dr. Orris' Medical Report

Howard first argues that the ALJ was unclear as to the basis for Dr. Orris' decision and was therefore required to recontact Dr. Orris under case law, Social Security Ruling ("SSR") 96-5p and 20 C.F.R. § 404.1527(d)(3). Howard also argues that the ALJ neglected to properly develop the administrative record when he discredited Dr. Orris' assessment based on his conclusion that it "consisted of the examiner's conclusory restrictions without any documented basis therefor." (R. 21).

### 1. Requirement to Recontact Dr. Orris

Howard argues that the ALJ should have recontacted Dr. Orris on three bases: (1) the decision in *Smith v. Apfel*, 231 F.3d 433 (7th Cir. 2000), which requires an ALJ to recontact a physician if he is unable to make a decision in the case due to a lack of information; (2) SSR 96-5p, which requires that an ALJ recontact a treating physician if the ALJ is unclear as to the basis of the treating physician's opinion; and (3) 20 C.F.R. § 404.1527(d)(3), which, as in *Smith*, requires a ALJ to recontact a physician if he or she is unable to determine from the evidence presented whether the claimant is disabled.

Howard first relies on *Smith* for the proposition that the ALJ should have recontacted Dr. Orris and ordered more tests because the ALJ was allegedly unclear as to the basis for Dr. Orris' decision. In *Smith*, the ALJ discredited the claimant's treating physician's two assessments because they were not based on persuasive or reasonable evidence and because the physician failed to order x-rays to confirm the presence of arthritis. 231 F.2d at 437. Instead, the ALJ relied on x-rays that were 10 years old and reflected the beginning stages of degenerative arthritis. *Id.* After the District Court granted summary judgment in favor of the Commissioner in this case, the Seventh Circuit remanded the case, concluding that the failure to order x-rays was not an appropriate basis to entirely discredit a physician's assessment, and holding that if the ALJ was "concerned that the medical evidence was insufficient to determine whether [the claimant] was disabled, [the ALJ] should have ordered more recent x-rays." *Id.* (citing 20 C.F.R. § 404.1517). Thus, the ALJ in *Smith* did not properly determine whether the claimant was disabled, as he failed to order current x-rays.

*Smith* is distinguishable from the present case. Here, there was no lack of information that prevented the ALJ from determining whether Howard was disabled. X-rays taken of Howard on February 29, 2000 showed that he was normal (R. 183), and it was noted in the Physical Residual Functional Capacity Assessment completed by the state agency physician that Howard's lumbosacral spine x-ray was negative. (R. 191). The ALJ also stated in his opinion in two separate instances that the evaluation of Dr. Orris included a cervical spine x-ray which revealed generative joint disease with a bone spur and narrowing of the C4-C5 space with straightening of spine due to muscle spasm. (R. 20). The ALJ also had before him three other physician's reports, all of which showed almost no limits on Howard at all. Unlike *Smith*, there was not a lack of information in this case that prevented the ALJ from reaching a decision regarding Howard's disability. Therefore, we find that the ALJ was not required to recontact Dr. Orris under *Smith*.

Second, Howard argues that the ALJ was required to recontact Dr. Orris under SSR 96-5p. However, SSR 96-5p applies only to treating physicians. It states:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

The regulations define a treating physician as a physician who has an ongoing relationship with the claimant. 20 C.F.R. § 404.1502.

Dr. Orris examined Howard on only two occasions, for one to two hours each time. (R. 199). We do not consider this to be ongoing treatment and do not consider this

sufficient to qualify Dr. Orris as a "treating physician." The distinction between a treating and nontreating physician is significant. Since a treating physician has generally more knowledge about the claimant's conditions, his or her opinion is given more weight. *See* 20 C.F. R. § 404.1527(d)(2)(ii). Therefore, as a non-treating physician, the ALJ was not required by SSR 96-5p to recontact Dr. Orris.

Third, Howard cites 20 C.F.R. § 404.1527(d)(3) for the proposition that the ALJ should have recontacted Dr. Orris. However, as in *Smith*, this regulation only requires an ALJ to recontact a physician if the ALJ is unable to determine from the information provided whether or not the claimant is disabled. *See* 20 C.F.R. § 404.1527(d)(3). As discussed previously, we find that the ALJ had enough information before him to determine that Howard was not disabled.

The ALJ has a duty to make sure the record is developed completely. *See Thompson v. Sullivan*, 933 F.2d 581, 587 (7th Cir. 1991). However, the Seventh Circuit has noted that a record can never be complete, and that how much evidence to be gathered is a subject on which district courts must respect the Commissioner's reasoned judgment. *Kendrick v. Shalala*, 998 F.2d 455, 456-458 (7th Cir. 1993). The ALJ had before him enough information to determine that Howard was not disabled. He also held the record open past the close of the hearing so that Howard could supplement it. (R. 31-33). Therefore, we conclude that the ALJ was not required to recontact Dr. Orris to obtain more information regarding his report.

### 2. *Weight of Dr. Orris' Report*

Next, Howard argues that the ALJ's reasons for discounting Dr. Orris' assessment were inadequate. The regulations provide guidelines for an ALJ to apply

14

in determining the weight to be given to a physician's opinion. An ALJ should give more weight to an opinion that is supported by medical signs and laboratory findings. *See* 20 C.F.R. § 404.1527(d)(3). An ALJ should also consider the extent to which the physician's opinion is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(4).

In determining that Howard was not disabled, the ALJ found that Dr. Orris' report consisted of "the examiner's conclusory restrictions without any documented basis therefor." (R. 21). The ALJ also found that Dr. Orris' report was inconsistent with the rest of the record. (R. 21). For instance, Dr. Rana found that Howard had full capacity to perform daily physical activities. (R. 177) Dr. Velis found that, while Howard had low back pain, a limited range of motion and some muscle tenderness, he also had full range of all joints. (R. 178-180). Dr. Kovalsky found that Howard's lumboscral spine was normal (R. 183). Finally, the state agency physician concluded that Howard could perform medium-level work, but that he was limited by depth perception due to his right eye blindness. (R. 191).

Howard also argues that the ALJ never mentioned that Dr. Orris reported a muscle spasm. However, we disagree, as the ALJ specifically included this factor in his opinion. (R. 20). Indeed, a mere reading of the ALJ's opinion reveals that Howard's assertion in this regard is groundless.

This Court may not re-weigh the evidence or re-evaluate the facts. *Luna*, 22 F.3d at 689. Instead, we will affirm the ALJ's decision if there is substantial evidence to support the ALJ's conclusion. *Id.* In this case, the ALJ applied the factors set forth in 20 C.F.R.§ 404.1527(d) and determined that Dr. Orris' report should be given less weight

because of the lack of medical signs and laboratory findings supporting it, and because it was inconsistent with the rest of the record. (R. 21). Because this Court will not re-weigh the evidence and there is substantial evidence to support the ALJ's determination, we conclude that the ALJ did not improperly discount Dr. Orris' report.

## B. The ALJ did not erroneously assess Howard's Credibility

Howard argues that the ALJ erroneously discounted his credibility on two bases. First, Howard argues that the ALJ mischaracterized the record regarding his intent to return to work or school. Second, Howard argues that the ALJ erred by ignoring the qualified nature of his trip to Louisiana.

### 1. Testimony Regarding Returning to School and Work

First, Howard argues that the ALJ mischaracterized his testimony regarding his intent to return to school or obtain a computer job. In his opinion, the ALJ stated that "the claimant testified that he was thinking of going to school or getting computer work that he is sure he could do." (R. 20). Howard argues, however, that he testified that he merely wanted to go to school or thought he could go to school, and that school attendance is not the same as sustaining substantial gainful activity.

Howard argues that, in making such statement, the ALJ misstated the record, and that this mischaracterization is impermissible under *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001). In *Zurawski*, the Seventh Circuit overturned the ALJ's credibility determinations because she did not provide specific reasons for her credibility findings. *Id.* at 887. In contrast, in the present case, the ALJ did provide specific reasons. However, that may not be enough, because if the ALJ's specific reasons are not supported by the record, this Court should overturn the ALJ's decision. In order to

overturn an ALJ's credibility determinations, they must be "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

The Commissioner argues that the ALJ's credibility findings are supported by the record. The discussion at the hearing on this issue was as follows:

Q: Have you looked for something in the computer field?

A: Well, I have. But some people, they just don't do the mainframe work anymore. Everybody's going to networking, now, and—

Q: Yeah

A: --so. And I was contemplating, you know, going into school. You know, get into college, or something.

Q: And, what have you done about that?

A: Well, I have talked to some people, and some people are supposed to be getting back to me, but they haven't yet. So I'm just waiting to hear from them.

Q: But you think you might be able to go to school?

A: I hope so, yeah. I would like to.

Q: Okay. You think you'd be able to do that all right? Do you think you'd be able to do that all right?

A: Yes, sir.

(R. 44-45).

The ALJ summarized this dialogue in his opinion as: "And I note that the claimant testified that he was thinking of going to school or getting computer work the [sic] he is sure he could do." (R. 20). We note that Howard first stated that he was looking for work

17

in the computer field and that he was also thinking of going to school. Thus, we find that the ALJ's statement is not a patently wrong mischaracterization of the testimony.

Howard also argues that education is not considered a substantially gainful activity under 20 C.F.R. § 404.1572(c), and that the ALJ therefore erred by relying on the statement in support of his credibility determination. While Howard's statement of the law is correct, it is not relevant to the issue. The regulation cited by Howard relates to the first step in the five-step process used by the ALJ to determine disability, namely, whether or not the claimant is employed. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). If the ALJ had determined that Howard was involved in a substantial gainful activity under the first step, he would be considered not disabled, and the ALJ would not need to consider steps two through five. *Id.* In this case, the ALJ had already determined that Howard was not employed, and therefore was not intending to state that Howard was substantially and gainfully employed.

### 2. Testimony Regarding Howard's Trip to Louisiana

Second, Howard argues that the ALJ erred by ignoring the qualified nature of his trip to Louisiana. Howard argues that the ALJ disregarded the fact that his cousin drove him to Louisiana and that they took periodic rest stops. In his credibility determination, the ALJ stated that Howard "spends most of the day lying down, being able to sit only 30 minutes although he was able to make the 12 hour (claimant's estimate) drive to Louisiana to visit relatives." (R. 21). We conclude that the ALJ could reasonably find that the testimony that Howard can sit for only 30 minutes at a time was inconsistent with his testimony that he made the trip to Louisiana in 12 hours. As discussed above, we can only overturn the ALJ's credibility determination on a showing that it is patently

18

wrong. The ALJ 's conclusion that Howard's testimony was inconsistent when he testified that he could sit for only 30 minutes at a time yet he was able to make the 12-hour car ride to Louisiana is not, in our opinion, patently wrong. Therefore, we will not overturn the ALJ's opinion on this point.

## C. The ALJ's Step Five Determination was Supported by Substantial Evidence.

Howard also argues that the ALJ's step five determination was not supported by substantial evidence. In support of this contention, Howard argues that a large proportion of medium-level jobs are performed in environments where lack of depth perception is a hazard, and that Howard's right eye blindness therefore limits the amount of medium-level jobs he can perform.

In determining that Howard could perform a significant number of jobs in the national economy, the ALJ relied on the Medical-Vocational Guidelines. An ALJ may rely on these guidelines to determine whether an individual is capable of performing a significant number of jobs in the national economy suitable for individuals of various physical capacity, age, education, and work experience. *Caldraulo v. Bowen*, 857 F.2d 410, 413 (7th Cir. 1988). After consulting the guidelines, the ALJ should determine whether any non-exertional limitations affect the claimant's residual functional capacity. *See Fox v. Heckler*, 776 F.2d 738, 744 (7th Cir. 1985) (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 (7th Cir. 1985)). The guidelines are applicable only when they describe a claimant's abilities and limitations accurately. *Caldraulo*, 857 F.2d at 413. Howard argues that the ALJ should not have applied the guidelines because of his right eye blindness.

In this case, the ALJ determined that Howard had no non-exertional limitations

19

which prevented him from applying and relying on the guidelines. The ALJ concluded that Howard's right eye blindness was due to a childhood accident and that such blindness "had not prevented [him] from working or going to school in the past." (R.20). An ALJ is allowed to determine that a non-exertional limitation has no significant impact on a claimant's capacity to perform the range of work he or she is otherwise exertionally capable of performing. *Caldrulo*, 857 F.2d at 413. In *Orlando v. Heckler*, the ALJ concluded that the claimant's spinal fusion had remain unchanged for 20 years and that the claimant had been able to work and perform substantial gainful activity regardless of such spinal fusion. 776 F.2d 209, 213 (7th Cir. 1985). In a Sixth Circuit opinion cited by the Commissioner, the court found that the claimant's "blindness in one eye had little effect on the disability determination given his past work history." *Auer v. Secretary of Health and Human Svcs.*, 830 F.2d 594 (6th Cir. 1987). We find that, based on the fact that Howard was able to perform substantial gainful activity despite his right eye blindness, as well as the fact that Howard's previous work was medium-level and semi-skilled (R. 22, 59-60), there is substantial evidence to support the ALJ's conclusion that Howard's blindness had no significant impact on his capacity to perform medium-level work.

Finally, the ALJ also determined, in the alternative, that Howard was capable of returning to his past relevant work. (R. 22). Howard points out that the ALJ included this conclusion in the body of his opinion only, and not in the findings. We agree that it would have been more helpful if the ALJ had included this conclusion in his findings; however, the Seventh Circuit has clearly stated that it will not make such "needless formality" a requirement. *Orlando*, 776 F.2d at 213; *see also Waite v. Bowen*, 819 F.2d

1356, 1360-61 (7th Cir. 1987).

## Conclusion

We find the ALJ's decision to be supported by substantial evidence.

Therefore, the ALJ's decision is AFFIRMED. It is so ordered.

**ENTER:**

MICHAEL T. MASON
**United States Magistrate Judge**

**Dated:**    **July 18, 2003**